**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TANNICA S. BINDER**, *Plaintiff,* vs. **OKLAHOMA DEPARTMENT OF REHABILITATION SERVICES.**, *Defendant.* | Case No.: CIV-16-1039-W |

## COMPLAINT

COMES NOW the Plaintiff, TANNICA S. BINDER, by and through her attorneys of record, Robert J. Wagner and Jon J. Gores of the firm WAGNER & WAGNER, P.C., for her claims of relief against the Defendant, OKLAHOMA DEPARTMENT OF REHABILITATION SERVICES, and alleges and states as follows:

## PARTIES

1. Plaintiff, TANNICA S. BINDER (hereinafter "Plaintiff"), is Female and of both African-American and Puerto Rican descent and a resident of Oklahoma County, State of Oklahoma.

2. Plaintiff is a retired Staff Sergeant from the United States Army who is an absolute disabled veteran who suffers from Post-Traumatic Stress Disorder ("PTSD").

3. Defendant, OKLAHOMA DEPARTMENT OF REHABILITATION SERVICES (hereinafter "Defendant"), is a state agency organized and existing under the laws of the State of Oklahoma.

4. Plaintiff is a former employee of Defendant who was employed as a Business Manager, II from May 5, 2014 through November 23, 2015 when she was

forced to resign because of discrimination and hostile work conditions.

5. The incidents and occurrences which form the basis of Plaintiff's claims against Defendant occurred in Oklahoma County, within the United States District Court for the Western District of Oklahoma.

## JURISDICTION AND VENUE

6. This is a cause of action for discrimination based on race (African-American and Puerto Rican) in violation of Title VII of the Civil Rights Act of 1964, as amended; violation of the Oklahoma Anti-Discrimination Act (25 O.S. §1101, et seq); and retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended including § 704(a).

7. Jurisdiction over the federal claims is vested pursuant to 29 U.S.C. §626(c), 42 U.S.C. §12117(a), 29 U.S.C. §2617(a)(2) and 28 U.S.C. §1331. The state law claims arise out of the same core of facts and jurisdiction over those claims is provided by 29 U.S.C. §1367(b).

8. All of the actions complained of occurred in Oklahoma County, Oklahoma, and Defendant may be served in that county, wherefore venue is proper in this court under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391(b).

9. Plaintiff has complied with the administrative prerequisites of filing a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") in Charge No. (564-2016-00214) which is attached hereto (as "Exhbit-1") and incorporated herein by this reference.

10. The "Notice of Suit Rights" was issued and mailed to Plaintiff and Defendant on or about the 9th day of June 2016.

11. Plaintiff first received a copy of the "Notice of Suit Rights" or "Right to Sue Letter" on or after the 10th day of June 2016. A copy of said "Notice" is attached hereto (as "Exhibit-2") and incorporated herein by this reference.

12. The ninety (90) day period within which Plaintiff must file an action, pursuant to the "Notice of Suit Rights" expires on or after the 8th day of September 2016.

## STATEMENT OF FACTS

13. Plaintiff is an absolute disabled veteran from the United States Army.

14. Through Plaintiff's hard work and commitment she held the rank of Staff Sergeant when she retired from the United States Army.

15. Plaintiff is also of African American and Puerto Rican race.

16. Plaintiff is disabled or perceived as being disabled due to her PTSD from her combat experiences in the Army.

17. Defendant had a position open in the Oklahoma City office for the positon of Business Manager, II, and Plaintiff applied for the position.

18. Defendant reviewed Plaintiff's application and absolute veteran status, and after an interview she was selected for the position.

19. Plaintiff began her employment on or around May 5, 2014 in the Oklahoma City area office.

20. Plaintiff's job responsibilities were to do monthly accounting, supervise a team of business consultants, hire personnel, serve on selection committee, send out

facility announcements and secure new facilities, and oversee operations as they relate to the Randolph Shepard Act.

21. Within the first two (2) days of Plaintiff's employment, Plaintiff was confronted by two (2) of her team of business consultants, Terry Hope (hereinafter "Hope") and Marc Roberson (hereinafter "Roberson").

22. Plaintiff was the direct supervisor of Hope and Roberson.

23. Hope and Roberson told Plaintiff that they had "googled" her prior to arrival at Oklahoma Department of Rehabilitation Services.

24. Hope stated that what they learned from searching for information was that Plaintiff was black, female and young so she was going to be a "black bitch."

25. Roberson agreed with Hope as he explained this to Plaintiff.

26. In this same conversation Plaintiff was told by Hope and Roberson that they were with Beverly Wood (hereinafter "Wood") who was the Administrative Assistant for Plaintiff's direct supervisor, Mike Hamrick (hereinafter "Hamrick") with Hamrick and other members of the tech department when these searches and conclusions were made prior to meeting Plaintiff.

27. Upon hearing this information Plaintiff made a written complaint and reported this incident to her direct supervisor, Hamrick.

28. Hamrick held the position of Operations Coordinator.

29. Hamrick responded to Plaintiff that he would look into the incident but no investigation was ever conducted to Plaintiff's knowledge.

30. Plaintiff returned to work after speaking to Hamrick, and she immediately

was subjected to a Hostile Work Environment.

31. Plaintiff tried to direct Hope to follow her directives as she was his direct supervisor.

32. Hope stated that he did not have to follow any of her directives, and he was instructed that he did not have to listen or follow direction by Hamrick.

33. Hope further stated to Plaintiff in this same conversation that Hamrich wanted Hope to have Plaintiff's job and if he would have been interviewed he would have been provided the position and paid a higher salary.

34. Hope further stated that the only reason Plaintiff was hired by Hamrick was because she was an absolute veteran.

35. Other employees were present during this conversation, and they were subordinates of Plaintiff and part of the Business Consultant team.

36. These employees who were present were, Roberson, Charlie Pride, and Curtis Cunningham.

37. Hope stated to customers as well that she was only hired because of being an absolute veteran, and that they did not have to follow her directives.

38. Plaintiff again complained to Hamrick who did not do anything or investigate the incident.

39. Plaintiff's status as an absolute disabled veteran was discussed amongst employees and created a hostile work environment.

40. Plaintiff being a new hire did not disclose this to co-workers, but they were already aware.

41. Defendant was aware of Plaintiff's PTSD, and they regarded her as disabled or perceiving her as having a disability.

42. Plaintiff complained to Mike Hamrick who took no action.

43. After Hamrick refused to take any action or investigate, Plaintiff went to Human Resource, Mary Martin.

44. Plaintiff explained how she felt she was being discriminated against on basis of her race and being told by her subordinates they did not have to follow her direction.

45. Plaintiff further stated that this environment was hostile.

46. Mary Martin instructed Plaintiff she should make a complaint and speak to Doug Boone (hereinafter "Boone").

47. Boone was the Division Administrator and he was Hamrick's direct supervisor.

48. Plaintiff told Boone how she was being discriminated and treated to different terms and conditions of her employment.

49. Boone responded to Plaintiff by stating that as a black female she should be use to discrimination and accept it.

50. Boone proceeded to state that his wife was blind and she has overcome obstacles.

51. Plaintiff responded that just because she was black and female it was not acceptable.

52. No investigation or corrective action was taken by Boone, and Boone told

Plaintiff she should go back to Mary Martin in Human Resource department.

53. Plaintiff reported to Human Resource, and since Mary Martin was not present she made a complaint to Paula Moon who was HR supervisor.

54. Plaintiff was not aware of any action being taken, and Plaintiff continued to be subjected to hostile work environment and discriminatory comments.

55. Plaintiff was told she was "Dr. Jekyll and Mr. Hyde", "bi-polar" and "crazy" by Hope.

56. Plaintiff believes this was in connection with her disability, and Plaintiff complained to her supervisors and to HR of the discriminatory comments.

57. After no action was being taken, Plaintiff contacted Carol Shelley (hereinafter "Shelley") of the Merit Protection Board.

58. At the time Shelley was the interim director of merit protection.

59. Shelley advised Plaintiff that it would probably be a conflict if it came to merit protection.

60. Shelley encouraged Plaintiff to apply for merit protection to get out of the department, but Plaintiff wanted to not give up and continue working where she was hired.

61. The hostile work environment continued and Plaintiff continued to receive discriminatory comments and differential treatment from co-workers.

62. Plaintiff received her evaluation from Hamrick and she got satisfactory scores.

63. After the evaluation Plaintiff filed a complaint of the discrimination and

hostile work environment in late October early November of 2015.

64. Due to no action being taken to investigate or cure the discriminatory environment, Plaintiff felt she had no other choice but to resign.

65. Plaintiff could no longer continue to work in the environment and Plaintiff's constitutes a constructive discharge, in that no reasonable person could have been expected to continue to expose themselves to the discrimination, hostile workplace and retaliation.

66. Plaintiff has exhausted his administrative remedies by timely filing a charge of discrimination with the EEOC, raising the issues of discrimination based on race. (*See* "Exhibit-1")

67. Plaintiff was issued a "Right to Sue" letter on the 9th day of June 2016. (*See* "Exhibit-2")

68. The EEOC has a work share agreement with the Oklahoma Attorney General's Office of Civil Rights Enforcement ("OCRE") located in Oklahoma's Attorney General's Office such that a filing with the EEOC satisfies any requirements under the Oklahoma Anti-Discrimination Act.

69. Plaintiff's Right to Sue Letter as noted above was issued on or about the 9th day of June 2016 and received on or after the 10th day of June 2016, such that this action is timely filed within ninety (90) days of her receipt of the Right to Sue Letter.

## CAUSES OF ACTION

### COUNT I

**Violation of Title VII of the Civil Rights Act of 1964, as Amended**

Case 5:16-cv-01039-W   Document 1   Filed 09/07/16   Page 9 of 13

Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

70. Plaintiff is of African-American and Puerto Rican race.

71. Plaintiff belongs to a protected class due to her race (African-American and Puerto Rican) and due to her gender (female).

72. Plaintiff was discriminated against in the terms and conditions of her employment, being given less favorable assignments, having to do harder work with less assistance from others for equal or less pay than Caucasian employees.

73. Plaintiff was told she was a "Black Bitch" and other derogatory terms during her employment.

74. Plaintiff's subordinates were told they did not have to follow her direction, and Plaintiff made complaints to various management and members of Human Resource department.

75. Due to Plaintiff not receiving assistances as other non-African American employees, or no meaningful investigation to cure the treatment, Plaintiff was subjected to continuous discrimination on basis of her race in the work place.

76. To the extent that Defendant may allege other reasons for discrimination of Plaintiff either through terms and conditions of employment or in connection with her being forced to resign or constructively terminated, any such allegation should be considered evidence of pretext which along with failure to follow established policies should be viewed as evidence of intentional discrimination.

77. Being treated different and less favorably on the basis of race is discrimination.

78. The Defendant's conduct toward Plaintiff, as alleged above, has caused Plaintiff to suffer humiliation, embarrassment, degradation and emotional distress.

79. As a result of the intentional acts complained of herein, Plaintiff has suffered and will continue to suffer the loss of the career potential she had with Defendant, and the loss of wages, benefits and other compensation that such employment entails.

80. Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

81. As a result of the discrimination, Plaintiff has been caused embarrassment, humiliation, mental pain and anguish and lost wages.

82. Plaintiff seeks declaratory judgment that Defendant violated Title VII and award all damages authorized thereunder.

## *COUNT II*

**Violation of Oklahoma Anti-Discrimination Act (OADA)**

Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

83. Plaintiff seeks declaratory judgment that defendants violated the OADA and the public policy of the State of Oklahoma as defined therein.

84. Plaintiff seeks damages for violation of the OADA, but only to the extent state law is NOT a duplication of the relevant Federal law or remedies.

85. Plaintiff seeks relief for discrimination on the basis of her race and/or age.

86. Plaintiff also seeks relief under state law to the extent that "Any other result would condone breach of a duty imposed by law on all employers -- the duty not to

discharge an employee for attempting to correct an illegal or unethical act." <u>Rosenfeld v. Thirteenth Street Corp.</u>, 1989 Okla. LEXIS 105 (Okla. 1989) 4 I.E.R. Cas. (BNA) 770.

87. Plaintiff also requests relief under State law, which allows different damages, attorney fees and other remedies which are not authorized by Federal Law. <u>Shirazi v. Childtime Learning Center, Inc.</u>, 2009 OK 13, 204 P.3d 75 (Okla. 2009).

88. Defendant's failure to properly hire, train, supervise or discipline its employees and management for discrimination constitutes negligence.

89. The negligence included failure to establish policies to prevent discrimination on basis of race, protocol into investigating claims of discrimination and educating Defendant's employees.

90. As a result of negligence to properly hire, train, supervise or discipline those charged with carrying on the company's business, Plaintiff was subjected to discrimination the basis of race by her co-workers and managers who took no action to prevent a hostile work environment.

91. As a result of the discrimination, Plaintiff has been caused embarrassment, humiliation, mental pain and anguish and lost wages. Plaintiff claims damages in excess of ten thousand dollars ($10,000.00).

### COUNT IV

**Retaliation for Engaging in a Protected Activity in Violation of
Title VII of the Civil Rights act of 1964, as Amended, including § 704(a)**

Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

92. Plaintiff in addition to violations under Title VII being a violation of

Federal Laws, discrimination based on either Race or Disability are contrary to and violations of the Oklahoma Anti-Discrimination Act (OADA).

93. Plaintiff was constructively terminated from her employment on November 23, 2015 because the Defendant took no action after numerous complaints of being discriminated and subject to a hostile work environment.

94. Plaintiff made another formal complaint after receiving her annual performance evaluation by Hamrick.

95. After Plaintiff made another formal complaint Hamrick threatened to change her evaluation scores and make a negative review if she did not withdraw her complaint.

96. In response Plaintiff had no choice but to resign from her employment or continue working in this conditions.

97. Plaintiff's resignation should be viewed as a constructive discharge.

98. Plaintiff is a member of a protected class under her race (African American and Puerto Rican) and because of her gender (female).

99. Plaintiff engaged in a protected activity under § 704(a) of the Civil Rights Act of 1964, as Amended when she reported this discrimination and made formal complaints.

100. Plaintiff in response was subjected to a hostile work environment, subjected to unequal terms and conditions of employment then other employees who had not engaged in a protected activity, threatened negative reviews, and she was ultimately constructively terminated and forced to resign due to no corrective action from her

employer.

101. As a result Plaintiff was terminated from her employment.

102. Plaintiff has been caused embarrassment, humiliation, mental pain and anguish and lost wages. Plaintiff claims damages in excess of ten thousand dollars ($10,000.00).

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendant and all relief as may be appropriate, including, but not limited to actual damages, including lost wages, liquidated damages and front pay, and other benefits from working, non-economic damages, punitive damages, where authorized by law, pre and post judgment interest, attorney fees, costs and any other different or additional relief as may be just through law or equity.

                           Respectfully submitted,

                           WAGNER & WAGNER, P.C.
                           4401 N. Classen Blvd., Suite 100
                           Oklahoma City, OK 73118-5038
                           (405) 521-9499, (Fax) 521-8994
                           (e-mail) rjw@wagnerfirm.com

                           *s/ Robert J. Wagner*

By:_____
    ROBERT J. WAGNER, OBA #16902
    JON J. GORES, OBA #31068
    ATTORNEYS FOR PLAINTIFF